# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**BARBARA LEE DUMAS,**

      Plaintiff-Claimant,

      -vs-                                          Case No. 14-C-1321

**CAROLYN W. COLVIN**
**Acting Commissioner of Social Security,**

      Defendant-Respondent.

# DECISION AND ORDER

Plaintiff-Claimant Barbara Lee Dumas appeals the denial of her application for supplemental security income (SSI) benefits.[1] The Court is

---

[1] In determining whether a SSI claimant is disabled, an ALJ uses a sequential five-step inquiry that asks: (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether she can perform her past relevant work; and (5) whether the claimant is capable of performing any work in the national economy. *See* 20 C.F.R. § 416.920.

Under the Social Security Act, "an individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 1382c(a)(3)(J). Where an applicant for disability benefits is a substance abuser and has a potentially disabling illness, the ALJ must determine whether the applicant would be disabled absent her substance abuse. *See Kangail v. Barnhart*, 454 F.3d 627, 628 (7th Cir. 2006); *See* 20 C.F.R. § 416.935. Although the claimant bears the burden of providing evidence that substance abuse is not a contributing factor to her disability, the ALJ must still "adequately disentangle[]" the effects of an applicant's substance abuse from her other impairments. *Harlin v. Astrue*, 424 Fed.Appx. 564, 568 (7th Cir. 2011).

If the ALJ determines that the claimant is disabled and there is medical evidence of drug addiction or alcoholism (DAA), the ALJ must determine whether DAA is a contributing factor material to the determination of disability. 20 C.F.R. § 416.935(a). To determine whether DAA is a material factor, the ALJ must determine

reviewing the determination of the Administrative Law Judge (ALJ) who, having conducted a hearing, found that Dumas has severe impairments of substance addiction disorder, depression, panic disorder, personality disorder not otherwise specified (NOS), and status post cerebrovascular accident. (Tr. 22, ECF No. 14.) He further found that Dumas' impairments including the substance use disorder meet §§ 12.04, 12.06, and 12.09 of the Listing of Impairments of 20 C.F.R. Part 404, Subpart P, App. 1. However, he also found that without substance abuse Dumas' remaining impairments would be severe, but the impairments or combination of impairments would not meet the Listing; and Dumas would have the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 416.967(b), with the limitations that she could not balance or climb ladders or scaffolds, and must avoid heights and hazards. She would have no limitations in using her right hand and could use her left hand to assist with lifting and carrying, but she could not feel

---

whether the claimant will still be disabled if she stopped the substance use. 20 C.F.R. § 416.935(b)(1). To make this determination, the ALJ must evaluate which of the current physical and mental limitations would remain if the claimant stopped the substance use and then determine whether any or all of the remaining limitations would be disabling. 20 C.F.R. § 416.935(b)(2). If the ALJ determines that the claimant's remaining limitations are disabling, then she is disabled independent of the substance use and the ALJ must find that DAA is not a contributing factor material to the determination of disability. 20 C.F.R. § 416.935(b)(2)(ii). If the ALJ determines that the remaining limitations are not disabling, then the ALJ must find that DAA is a contributing factor material to the determination of disability, and, therefore, the claimant is not disabled. 20 C.F.R. § 416.935(b)(i).

or finger with her left hand. In addition, she would be limited to simple routine work (SVP 1-2) that does not require contact with the general public or more than occasional contact with co-workers or supervisors. (Tr. 25.) In finding Dumas not disabled, the ALJ further determined that based on Dumas' age, limited education, lack of past relevant work experience, and RFC, there were a significant number of jobs in the national economy she could perform including as a janitor, street cleaner, and inspector, as identified by the vocational expert (VE). (Tr. 30-31.) The Appeals Council denied review of the ALJ's decision, making it the final determination of the Commissioner. (Tr. 1-3.) 20 C.F.R. § 404.981; *Schomas v. Colvin,* 732 F.3d 702, 707 (7th Cir. 2013).

Dumas contends that (1) the ALJ's findings that substance abuse was a contributing factor to her disability and that without the abuse she would not be disabled are not supported by substantial evidence; (2) in assessing Dumas' credibility the ALJ did not comply with the requirements of Social Security Ruling (SSR) 96-7p and Seventh Circuit case law; and (3) the ALJ's hypothetical to the VE was incomplete.

To uphold the denial of benefits, the ALJ's decision must be supported by substantial evidence, which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Barnett v. Barnhart,* 381 F.3d 664, 668 (7th Cir. 2004). To determine whether substantial evidence exists, the Court reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence, resolving material conflicts, or reconsidering facts or the credibility of witnesses. *Beardsley v. Colvin,* 758 F.3d 834, 836-37 (7th Cir. 2014).

The ALJ must articulate, at least minimally, his analysis of all relevant evidence, *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir. 1994), and "the [ALJ's] decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues," *Lopez ex rel. Lopez v. Barnhart,* 336 F.3d 535, 539 (7th Cir. 2003). Additionally, the ALJ must "build an accurate and logical bridge from the evidence to his conclusion." *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000).

An ALJ's credibility determination is entitled to "special deference." *Schomas,* 732 F.3d at 708. The Court will reverse an ALJ's credibility finding only if it is patently wrong. *See Pepper v. Colvin,* 712 F.3d 351, 367 (7th Cir. 2013).

**Substance Abuse Assessment**

In contending that substantial evidence does not support the ALJ's finding that substance abuse was a contributing factor to her disability,

- 4 -

Dumas relies on the following excerpt from SSR 13-2p[2]:

> a. Many people with DAA have co-occurring mental disorders; that is, a mental disorder(s) diagnosed by an acceptable medical source in addition to their DAA. We do not know of any research data that we can use to predict reliably that any given claimant's co-occurring mental disorder would improve, or the extent to which it would improve, if the claimant were to stop using drugs or alcohol.
>
> b. *To support a finding that DAA is material, we must have evidence in the case record that establishes that a claimant with a co-occurring mental disorder(s) would not be disabled in the absence of DAA. Unlike cases involving physical impairments, we do not permit adjudicators to rely exclusively on medical expertise and the nature of a claimant's mental disorder.*

2013 WL 621536, at * 9 (Feb. 20, 2013, eff. March 22, 2013) corrections listed in 2013 WL 1221979 (March 22, 2013). (Emphasis added.)

Dumas contends that the ALJ erred in giving great weight to treating physician Dr. Asma Iqbal's opinion to support his finding that Dumas' substance abuse disorder was material to her disability. (Pl. Br. 18-19, ECF No. 18.) Dumas maintains that the ALJ erred when he cited Iqbal's report as indicating that she was still using heroin in 2011 (*see* Tr. 24), asserting that she testified she had not used since November 2010.

---

[2] These rulings are binding on ALJs. *Lauer v. Apfel,* 169 F.3d 489, 492 (7th Cir. 1999).

The colloquy on the issue between the ALJ and Dumas spans more than a transcript page. The discussion of when Dumas was using heroin and when she stopped was wandering, somewhat confusing, and must be considered in as a whole. (Tr. 52-53.)

The ALJ asked Dumas whether she had used heroin since November 2010. (Tr. 52.) Dumas initially stated "since 2010? I used heroin in 2010 to '11, because I went to the Meta House and I got on a methadone program." (*Id.*) She also testified that she got kicked out of the program in November 2011, because she smoked a joint, and that the day before she entered Meta House was the last day she used heroin. (Tr. 52-53.) Considered as a whole, Dumas' testimony provides substantial evidence to support the ALJ's conclusion that she was using heroin in 2011.[3]

Dumas also contends that the ALJ could not rely upon Iqbal's opinion that DAA was a contributing factor material to Dumas' disability because Iqbal did not find Dumas' substance abuse to be a contributing factor to her mental illness. However, review of the ALJ's decision

---

[3] Treatment records also provide substantial evidence to support the ALJ's conclusion that Dumas was using heroin in 2011. On July 16, 2011, Dumas presented at the Milwaukee County Behavioral Health Division and "admit[ted] to using heroin, alcohol, cocaine [and] mj [marijuana]." (Tr. 425.) She was sent to Genesis for "detox." (*Id.*) Subsequently, upon admission to Meta House on August 8, 2011, for residential treatment, Dumas indicated that IV [intravenous] heroin was her drug of choice, and that she had used the drug every day during the preceding 30 days. (Tr. 431-32.) Iqbal's October 5, 2011, progress notes also report that Dumas had been "clean" for two months. (Tr. 608.)

- 6 -

discloses that he relied on reports by Joan R. Nutall, Ph.D., Thomas S. Lehmann, Ph.D. and non-examining medical experts, Kyla King, Psy.D. and Esther Lefevre, Ph.D. (See Tr. 27-28.) The ALJ accurately summarized those reports and reasonably relied upon them in support of his determination that DAA was material to Dumas' disability. In particular, the ALJ stated he gave great weight to the opinions of the State agency medical consultants, two of whom were King and Lefevre. (Tr. 28.) The narrative portion of King's report contains her analysis of why absent DAA Dumas would be capable of performing unskilled work on a sustained basis. (Tr. 410.)

Dumas also contends that the ALJ failed to accurately cite her testimony, but she does not provide any examples of errors. Dumas also states that the ALJ failed to discuss the objective medical evidence he relied upon. However, the ALJ's decision contains a detailed discussion of the objective medical evidence in the Nutall and Lehmann reports. (*See* Tr. 26-30.) Absent specificity, Dumas has not established that the ALJ's decision is not supported by substantial evidence with respect to the materiality of Dumas' substance abuse impairments on her other mental impairments. Furthermore, the ALJ's materiality analysis complies with SSR 13-02p in that it does not rely exclusively on medical expertise and

the nature of Dumas' mental disorder. Rather, the ALJ considered other evidence, including Dumas' reports of her own abilities (Tr. 26, 28), when concluding that DAA was material to her disabilities.

Dumas also maintains that the ALJ did not adequately articulate the weight he gave to the opinion of Dr. Vikram Gopal, D.O., regarding Dumas' ability to perform work-related activities, (Tr. 534-40), and did not comply with SSR 96-2p, 1996 WL 374188, regarding giving controlling weight to treating source medical opinions. Gopal completed a detailed form and indicated that Dumas had poor or no ability to maintain socially appropriate behavior and was unable to meet competitive standards with respect to interacting appropriately with the general public and traveling to unfamiliar places. (Tr. 538.) He commented "[m]ental illness impairs her ability to regulate complex decision making and emotional regulation." (*Id.*) He indicated that January 1, 2012, was the earliest date the symptoms and limitations he noted applied to Dumas. (Tr. 539.)

The ALJ summarized Gopal's findings and stated "[t]his conclusory, checklist-style opinion statement is unsupported by any explanation and is inconsistent with the objective evidence and the claimant's daily activities." (Tr. 29). The ALJ did not quote Gopal's comments. While his explanation is brief, the ALJ adequately stated the weight that he gave to

Gopal's opinion and reasons that he did not give it controlling weight.

## Credibility Assessment

Dumas also maintains that the ALJ's credibility assessment is faulty because it does not provide specific reasons as required by SSR 96-7p, 1996 WL 374186, and it uses "shunned" credibility boilerplate language. (Pl. Br. 27.) She also states that ALJs have been criticized for equating activities of daily living with an ability to work. (*Id.* at 28 citing *Bjornson v. Astrue,* 671 F.3d 640, 64[7] (7th Cir. 2012)).

The use of boilerplate is not a ground to remand if the ALJ justified his credibility assessment based on the evidence. *Loveless v. Colvin*, No. 15-2235, 2016 WL 147547, at *6 (7th Cir. Jan. 13, 2016). In determining credibility, an ALJ must consider several factors, including the claimant's daily activities, level of pain or symptoms, aggravating factors, medication, treatment, and limitations, *see* 20 C.F.R. § 416.929(c)(3); SSR 96-7p, and justify his finding with specific reasons. *Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009).

The ALJ must "competently explain" any adverse credibility finding "with specific reasons 'supported by the record.'" *Engstrand v. Colvin,* 788 F.3d 655, 660 (7th Cir. 2015). Furthermore, in analyzing the evidence, the ALJ is not permitted to "cherry-pick," ignoring evidence that conflicts with

- 9 -

his conclusion. *Scott v. Astrue,* 647 F.3d 734, 740 (7th Cir. 2011). While an ALJ is not required to mention every piece of evidence, "he must at least minimally discuss a claimant's evidence that contradicts the Commissioner's position." *Godbey v. Apfel,* 238 F.3d 803, 808 (7th Cir. 2000).

In making his mental health credibility determination the ALJ considered Dumas' daily activities, observations during a telephone interview, her attendance at GED classes three hours a day when she could get transportation, as well as her efforts to obtain employment. (Tr. 28). However, these observations were selective and did not fairly describe Dumas' testimony.

Citing exhibits 2E, (a function report completed by Dumas) and 24F (medical reports from Dumas' hospitalization at the Milwaukee Behavioral Health Division), the ALJ found that Dumas' activities of daily living included occasional housework, preparing meals, going shopping, taking care of her grandchildren and using public transportation. However, in the function report, Dumas reported that while she prepares sandwiches daily, she needs help lifting pots and pans, spends half a day performing household chores, needs reminders to clean up, needs help carrying laundry baskets, and does not shop — "no income." (Tr. 219-20.)

- 10 -

The GED classes are completed at the student's own pace and there is no teacher, and Dumas estimated she had been taking the classes since April 2013. (Tr. 45-46) While the ALJ cited Dumas' efforts to find work (Tr. 28), he does not mention that she had most recently worked "last month . . . for two days and they let me go because I got into it with the coworker." (Tr. 43.) Nor did the ALJ mention that Dumas lost a job as a banquet server when she mumbled something under her breath after being told to be careful because a cloth napkin was touching the food she was carrying. (Tr. 45.) The ALJ's credibility findings are minimal and involved cherry-picking. This action must be remanded so that the Commissioner can revisit her credibility determination.

### Vocational Expert Hypothetical

Dumas also maintains that the ALJ's hypothetical to the VE was incomplete because it did not include Dumas' limitations with respect to concentration, persistence, and pace, citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010). The Commissioner contends that *O'Connor-Spinner* did not create a hard and fast rule, and that "by relying on the opinions of Drs. King and Lefevre, the ALJ accounted for [those] limitations." (Def. Br. 7, ECF No. 25.)

In his decision, the ALJ found with regard to "concentration,

persistence, or pace, the claimant would have moderate difficulties if her substance abuse stopped." (Tr. 25.) He also found:

> It is apparent that the claimant still has mental limitations when she is not using substances; however, . . . her limitations are primarily in the areas of social functioning and concentration, persistence, or pace. Therefore, it is reasonable to find the claimant is limited to simple, routine work that does not require contact with the general public or more than occasional contact with co-workers and supervisors.

(Tr. 28.)

At the hearing, with respect to Dumas' mental impairments, the ALJ asked the VE what jobs would be available for a person "limited to simple, routine work with an SVP: 1 or 2; no contact with the general public; no more than occasional contact with coworkers and supervisors." (Tr. 63.)

The ALJ's hypothetical question in Dumas' case is extremely similar to that addressed in *Varga v. Colvin*, 794 F.3d 809, 814-15 (7th Cir. 2015). *Varga* states "we have repeatedly rejected the notion that a hypothetical like the one here 'confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace.'" *Id.* (Citations omitted). The missing limitations in concentration, persistence, and pace are highlighted by the ALJ's subsequent addition to the

- 12 -

Case 2:14-cv-01321-RTR   Filed 02/08/16   Page 12 of 14   Document 27

hypothetical asking the VE "if the person were . . . off task for 20 percent or more of the workday, would they be able to perform those or any . . . jobs?" (Tr. 64.) The VE responded no. (*Id.*)

The deficiencies in the ALJ's credibility determination may affect his determination of Dumas' RFC. That, along with the ALJ's omission of moderate limitations in concentration, persistence, or pace in the hypothetical to the VE, requires that upon remand the Commissioner revisit whether there are a significant number of jobs in the national economy that would be available to a person with Dumas' vocational characteristics.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

Dumas' action for judicial review (ECF No. 1 )is **GRANTED** to the extent that pursuant to sentence four of 42 U.S.C. 405(g) this matter is **REMANDED** for further proceedings consistent with this Decision and Order and **DENIED** in all other respects;

The Clerk of Court is **DIRECTED** to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 8th day of February, 2016.

> **BY THE COURT:**
>
> _____
> **HON. RUDOLPH T. RANDA**
> **U.S. District Judge**

- 14 -

Case 2:14-cv-01321-RTR   Filed 02/08/16   Page 14 of 14   Document 27